Clifton E. BLUE, Appellant,

v.

STATE of Alaska, Appellee.

No. 2677.

Supreme Court of Alaska.

Jan. 17, 1977.

Lyle R. Carlson, Fairbanks, for appellant.

Natalie Finn, Asst. Dist. Atty., and Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

Clifton E. Blue appeals from his conviction and sentence on four counts of armed robbery. His appeal raises issues involving: (1) the right to an attorney in a pre-indictment lineup, (2) the validity of the pre-indictment lineup, (3) the use of a co-defendant's statement and Blue's right to confrontation where the co-defendant does not testify, (4) admission of hearsay statements by a Mr. Hyatt and (5) the validity of the sentence imposed.

We hold that Blue's right to an attorney at a pre-indictment lineup is outweighed by the exigencies involved in this case, and that the lineup was not so suggestive as to violate due process. Admission of Mr. Hyatt's hearsay statements, however, was erroneous and violated Mr. Blue's right to confrontation. Given the facts of this case, we cannot say that this error was harmless; thus, we must reverse and order a new trial for Mr. Blue.[1]

## I. FACTS

On April 17, 1975, between 7:30 and 8:00 p.m., the Club Manchu Bar in Fairbanks, Alaska was robbed by two men wearing nylon stockings over their heads. Both men were armed, one with a pistol and the other with a rifle. No one was injured in the robbery, although one of the weapons was discharged, a bullet making a hole in the ceiling over the bar. The men took money from three customers in the bar, amounting to approximately $270.00, as well as about $240.00 from the cash register in the bar which was emptied by the bartender, Frances Nickens.

Shortly after the robbers left the bar, Ms. Nickens telephoned the Fairbanks police emergency number and gave this description of the robbers: two white men, one tall and one a little shorter, both with dark hair down on their necks; nylons over their heads; one had a rifle and one a pistol; one was wearing a blue jacket with patches on it. She couldn't describe the clothing of the other one. Although she thought she recognized one of the men, she told the police that she was too upset at the moment to think too much.

Police officers arrived at the Club Manchu approximately half an hour after the robbery and questioned Frances Nickens and the five customers who were present during the robbery. Ms. Nickens stated that she had recognized one of the men whose first name was Dennis. He was a friend of her ex-husband. She had known him for more than a year and had seen him from eight to twelve times during the preceding year. She did not know his last name. A person who entered the bar shortly after the robbery supplied the last name of Benefield for the man named Dennis after hearing Ms. Nicken's description of him. Six police officers, including one who knew Dennis Benefield, then began a search of several bars which Mr. Benefield was known to frequent.

At approximately 9:30–9:45 p. m., three officers in informal street clothes entered the third bar of their search, the Circle M, where one of the officers recognized Dennis

---

1. Our disposition of the case obviates the need to determine the validity of the sentence imposed. Furthermore, because of our reversal in this case, we need not determine whether statements of co-defendant Benefield would also result in reversible error where the defendants were jointly tried yet did not take the stand.

Benefield. A man later identified as Clifton Blue was with Dennis Benefield, and the two were engaged in conversation with a man later identified as Wayne Hyatt. The officers reportedly overheard a conversation in which Hyatt stated to Benefield and Blue that he had heard that they had robbed the Club Manchu. Both men denied this accusation and said that if they were being accused of such a thing then they might as well do it.[2] At this point, three other officers outside the bar were alerted that Dennis Benefield and a man meeting the description of the other robber were inside. They entered the bar, and several officers pulled Benefield and Blue from their bar stools and pushed them against the wall in order to frisk them for weapons. Both men were handcuffed, and both men were given their *Miranda* warnings.

Officer Vogt, who was in charge of the investigation, telephoned Frances Nickens at approximately 10:30 p. m. and asked whether she could come to the Circle M. She arrived approximately 20 minutes later and was shown into the poolroom area of the bar where eight Caucasian men were sitting informally .or playing pool. The eight men were the two defendants, three undercover police officers and three patrons of the bar—all similarly dressed in casual clothing. There were at least three or four tall men. Benefield and Blue were seated at the same table, and there were other people sitting close by. Blue was not wearing handcuffs at the time, by his own admission. While Benefield testified at the preliminary hearing to suppress the results of the lineup that he was handcuffed when Ms. Nickens viewed him, two officers testified that he was not handcuffed during the Circle M lineup.

At the first viewing, Frances Nickens positively identified Dennis Benefield as one of the robbers. She could not identify Blue seated, however, and asked to see the participants standing to help her identify the other suspect. Approximately five minutes later, she was shown a second lineup of all eight men standing against the pool table. At this time she positively identified Blue as the other robber, largely because of the way he moved and his actions. Based on this identification, Blue and Benefield were formally arrested and charged with armed robbery.

A second pre-indictment lineup was held in district court on April 29, 1975, in which the ten participants wore stockings over their heads. Counsel for the defendants were present. At this second lineup, Ms. Nickens was again able to identify Dennis Benefield as one of the robbers but was unable to identify Blue or anyone else. Of the three other eyewitnesses to the robbery who viewed the lineup in district court, no one identified either Blue or Benefield. One of the eyewitnesses, George Haskins, excluded Blue as one of the robbers, although he testified at trial that he was not "100% positive" of this exclusion. Blue and Benefield were subsequently indicted on May 14, 1975.

The defendants were jointly tried in June of 1975. The evidence at trial included the eyewitness identification summarized above. Ms. Nickens identified both Benefield and Blue in court. She based her in-court identification of Blue on her prior identification at the Circle M Bar, as well as her recognition of Blue during a jury view of the Club Manchu on the first morning of trial.

The only physical evidence in the state's case was a blue denim jacket which Blue was wearing on the night he was arrested at the Circle M Bar.[3] Ms. Nickens had

---

2. One officer stated that he had heard an explicit denial of Hyatt's accusation; the other apparently heard only the statement that, if accused, they might as well commit a robbery.

3. The Fairbanks police had intended to send all the physical evidence connected with the robbery—the jacket, the money found on Blue and Benefield at the time of their arrest ($226.00

and $54.00 respectively) and the results of a hand-swabbing test performed on the night of the arrest—to the FBI in Washington, D.C., for analysis. The analysis was to have shown whether the loose threads on the outside of the jacket were coming through from the inside lining or were put on from the outside, whether there were any fingerprints on the shell casing, whether Frances Nickens' fingerprints were on

described the jacket worn by the taller robber as being blue denim with circular light-colored patches on the chest and one on the right arm near the shoulder. The jacket worn by Blue at the time of his arrest did not have any patches on it. Two police officers testified that they had observed some loose red and blue threads hanging from the pockets and one shoulder of the jacket on the night of the arrest. They also testified to observing stitching marks and an outline of what might have been a removed patch. At trial, these officers admitted that they could no longer detect the design of a patch on the jacket. Blue's sister-in-law testified that she had bought several patches and had given some to Blue's wife. Many had yellow backgrounds, and most were round. She had never seen Blue's jacket with any patches on it.

In addition to eyewitness testimony and the testimony concerning the denim jacket, two police officers testified at trial to the conversations between Hyatt, Blue and Benefield in the Circle M Bar.

## II. RIGHT TO AN ATTORNEY AT THE CIRCLE M LINEUP

We first focus our attention on the April 17, 1975 lineup at the Circle M Bar. While the police did give the mandatory *Miranda* warnings, they did not inform defendants of the right to have an attorney present at the Circle M lineup. The defendant urges us to hold that failure to provide counsel at this stage in the pre-trial process denies him

his constitutional right to counsel as guaranteed by Art. I, Sec.11 of the Alaska Constitution.

■ The United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held that a lineup after an accused has been indicted is a critical stage of a criminal proceeding at which the accused has a sixth amendment right to counsel under the United States Constitution. This right is applicable to the states through the fourteenth amendment.[4] The *Wade* and *Gilbert* decisions created a *per se* exclusionary rule for identifications based on *post-indictment* pre-trial lineups conducted in the absence of counsel. *Wade* and *Gilbert,* however, arguably left open the question of a defendant's right to an attorney during *pre-indictment* lineup procedures.

■ The point at which the pre-trial right to counsel attaches under federal law in identification procedures was clarified by the Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). There the Court, in a plurality opinion, held that the federal constitutional right to counsel does not attach until the accused has been indicted or formally charged with a criminal offense and, hence, does not apply to a pre-indictment lineup. This pre- and post-indictment distinction has been widely applied by federal and state courts.[5]

---

the money found on Blue and Benefield and whether there was any gunpowder residue on the hands of either or both men. The police failed to put the evidence into the mail until approximately a week before the trial was to begin. At that point, it was determined by the Fairbanks District Attorney's Office that the evidence would not be returned by the FBI laboratory in time for trial, and therefore, the police retrieved the package from the post office before it was mailed. The police officer in charge of the investigation admitted that the results of these tests and other investigative procedures which were not performed by the police could have been useful to the defense. The defendants first asked for a continuance, which was granted. The state suggested that it be long enough to allow for sending the materi-

al evidence to the FBI for testing. The defendants subsequently decided not to waive the four-month rule and to proceed to trial without the benefit of the FBI analysis.

4. *Gilbert v. California,* 388 U.S. at 271, 87 S.Ct. at 1955–1956, 18 L.Ed.2d at 1185; *Gideon v. Wainwright,* 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–796, 9 L.Ed.2d 799, 804 (1963).

5. *See, e. g., Martin v. Indiana,* 521 F.2d 682, 685–86 (7th Cir. 1975); *Holland v. Perini,* 512 F.2d 99, 102–03 (6th Cir. 1975), *cert. denied,* 423 U.S. 934, 96 S.Ct. 291, 46 L.Ed.2d 266 (1975); *United States ex rel. Robinson v. Zelker,* 468 F.2d 159, 163 (2nd Cir. 1972), *cert. denied,* 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (1973); *Spriggs v. Wilson,* 151 U.S.App. D.C. 328, 467 F.2d 382, 387–88 (1972); *People ·*

■ The Supreme Court of Alaska has in the past adopted the United States Supreme Court's *Wade-Gilbert* holdings in *McCracken v. State,* 521 P.2d 499, 501–04 (Alaska 1974), and *Davis v. State,* 499 P.2d 1025, 1032–33 (Alaska 1972), *cert. granted,* 410 U.S. 925, 93 S.Ct. 1392, 35 L.Ed.2d 586 (1973), *rev'd on other grounds,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This court, however, has not yet had the opportunity to discuss the plurality decision in *Kirby* and to determine the issue of an accused's right to counsel under the Alaska Constitution at a pre-indictment lineup.[6] Although a plurality of the United States Supreme Court justices would not recognize a pre-indictment right to counsel, the Alaska Supreme Court is not limited by decisions of the United States Supreme Court or by the United States Constitution when interpreting its state constitution. The Alaska Constitution may have broader safeguards than the minimum federal standards.[7] Specifically, in *Roberts v. State,* 458 P.2d 340, 342–43 (Alaska 1969), the right to counsel under the Alaska Constitution was given broader application than the right to counsel provision of the sixth amendment had been given by the United States Supreme Court.

■ The determination whether counsel is required at a pre-indictment lineup involves a difficult balance. On the one hand, the state has a legitimate concern in the "prompt and purposeful investigation of an unsolved crime". *Kirby v. Illinois,* 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411, 418–19 (1972)(plurality opinion of Justice Stewart). Conducting an eyewitness identification procedure as soon as possible and while the memory of the eyewitness is fresh serves a valid purpose. Assuming the lineup complies with due process safeguards, the fresher the memory, the more accurate and trustworthy the identification may be.

On the other hand, we must also view the suspect's legitimate right "to be protected from prejudicial procedures". *Kirby v. Illinois,* 406 U.S. at 691, 92 S.Ct. at 1883, 32 L.Ed.2d at 418. The interests of a suspect in having counsel present involve the constitutional guarantee of right to counsel, the right to due process during the lineup procedures and the right to confront witnesses which insures effective cross-examination at trial. As we have stated:

> In evaluating evidence used at trial from a lineup without counsel, we are not merely concerned with the fundamental fairness of that lineup. We are also concerned with the need for counsel to be present in order to evaluate the circumstances and prepare his argument at trial sufficiently to provide the defendant with his sixth amendment right to confront identifying witnesses.[8]

*v. Lowe,* 184 Colo. 182, 519 P.2d 344, 346–47 (1974); *State v. Sadler,* 95 Idaho 524, 511 P.2d 806, 809–16 (1973); *State v. Osbey,* 213 Kan. 564, 517 P.2d 141, 145–46 (1973); *Spencer v. State,* 88 Nev. 392, 498 P.2d 1335, 1336 (1972); *Young v. State,* 531 P.2d 1403, 1405 (Okl.Cr. App.1975).

**6.** Art. I, Sec. 11 of the Alaska Constitution provides in part that "in all criminal prosecutions, the accused shall have the right . . . to have the assistance of counsel for his defense." Alaska cases addressing the right to counsel at lineups or other pre-trial identification procedures include *Kimble v. State,* 539 P.2d 73, 77–79 (Alaska 1975); *Roberts v. State,* 458 P.2d 340, 342–43 (Alaska 1969); *McCracken v. State, supra;* and *Davis v. State, supra.* In *McCracken* and *Davis,* this court held that defendants have a right to counsel at pre-trial lineups. In *Roberts,* this court extended the right to counsel to a proceeding where the state took a handwriting exemplar of the accused. In *Kimble v. State,* this court ruled that there was no constitutional right to counsel at a pre-trial photographic identification procedure. In all of these cases except *Davis* which involved a pre-indictment lineup, the pre-trial identification occurred after indictment and after appointment of counsel. The decision in *Davis* was not dependent on the timing of the lineup, and that issue was not discussed.

**7.** *Lemon v. State,* 514 P.2d 1151, 1154 n. 5 (Alaska 1973); *Lanier v. State,* 486 P.2d 981, 986 (Alaska 1971); *Whitton v. State,* 479 P.2d 302, 309 (Alaska 1970); *Baker v. City of Fairbanks,* 471 P.2d 386, 401 (Alaska 1970); *Roberts v. State,* 458 P.2d 340, 342–43 (Alaska 1969); *State v. Shelton,* 368 P.2d 817, 818–19 (Alaska 1962).

**8.** *Davis v. State,* 499 P.2d at 1032. *See also McCracken v. State,* 521 P.2d at 502. Justice Brennan discusses the rationale underlying

In balancing the need for prompt investigation against a suspect's right to fair procedures, we hold that a suspect who is in custody [9] is entitled to have counsel present at a pre-indictment lineup unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation.[10]

The facts of this case provide an example of both the general rule and exigent circumstances. The police were notified of a crime immediately after it occurred, were on the scene within one half hour, and discovered that an eyewitness thought she knew and could recognize one of the participants; they immediately pursued the suspect. Within two and one half hours, the police had located the suspect and notified the eyewitness who arrived to identify the suspect approximately 20 minutes later. The identification itself was made within three hours of the robbery. Here, the police were making every effort to conduct a lineup while the memory of the witness was fresh. Significantly, the lineup was held at 11:00 p. m., and providing a right to counsel at this late hour of the night might have postponed the lineup until the following day. Under these circumstances, providing counsel could have precluded the state's diligent efforts to obtain an identification while the facts were still fresh in the eyewitness' mind. We cannot find that providing counsel under these circumstances is practical, reasonable or mandated by our constitution.[11]

On the other hand, we would apply the general rule and require that counsel be present under the circumstances of the later district court lineup, even though Blue had not yet been indicted. In contrast to the Circle M lineup, the district court lineup was held several days after the incident, *not* immediately following the crime. There was ample time to notify and have counsel present. Counsel, in fact, was present, and no identification evidence was lost. Under these circumstances, requiring counsel's presence does not substantially interfere with legitimate law enforcement. To the contrary, providing counsel will prevent constitutional errors and increase the likeli-

---

Wade in his dissent in *Kirby,* 406 U.S. at 696, 92 S.Ct. at 1885, 32 L.Ed.2d at 421, stating:
And even though cross-examination is a precious safeguard to a fair trial, it cannot be viewed as an absolute assurance of accuracy and reliability. *Thus in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself.* (emphasis added)
Justices Brennan, Douglas and Marshall felt that this rationale was equally applicable to both *pre-* and *post*-indictment lineup procedures.

9. Blue, although not formally under arrest, was in custody in that he was detained and not at liberty to leave. *See State v. Green,* 111 Ariz. 444, 532 P.2d 506, 508 (1975); *State v. Thomas,* 24 Ariz.App. 230, 537 P.2d 615, 616 (1975); *State v. Frazier,* 88 N.M. 103, 537 P.2d 711, 713 (1975).

10. *See People v. Anderson,* 389 Mich. 155, 205 N.W.2d 461, 465–68 (1973). *See also People v. Fowler,* 1 Cal.3d 335, 82 Cal.Rptr. 363, 370, 461 P.2d 643, 650 (1969), where the California Supreme Court adopted a position similar to that later adopted by the *Kirby* dissenters in assuming that the "post-indictment" language in

Wade and *Gilbert* was simply descriptive of the facts in those cases and was not meant to limit the operation of the rules announced. The California court found nothing in the reasoning of *Wade* and *Gilbert* which required a limitation of the rules to post-accusation lineups. Furthermore, the court reasoned that the establishment of the date of formal accusation as the time when the right to counsel attached, could only lead to situations where substantially all lineups were conducted before the indictment or information. *Accord, People v. Banks,* 2 Cal.3d 127, 84 Cal.Rptr. 367, 372, 465 P.2d 263, 268 (1970). We know of no case where the California Supreme Court has ruled on the issue since the *Kirby* decision, although at least two California appellate courts have ruled that a defendant has no right to counsel in a pre-indictment lineup based on the Supreme Court's decision in *Kirby. People v. O'Roy,* 29 Cal. App.3d 656, 661–62, 105 Cal.Rptr. 717, 720 (1973); *People v. Faulkner,* 28 Cal.App.3d 384, 390, 104 Cal.Rptr. 625, 629 (1972). *See also Kirby v. Illinois, supra* (dissenting opinion).

11. *See, e. g., Russell v. United States,* 133 U.S. App.D.C. 77, 408 F.2d 1280 (1969), *cert. denied,* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *United States v. Davis,* 399 F.2d 948 (2nd Cir. 1968), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1969); *Commonwealth v. Turner,* 454 Pa. 520, 314 A.2d 496 (1974).

hood that eyewitness evidence will eventually be admissible at trial.

■ In summary, absent exigent circumstances, we hold counsel should be provided even though the lineup is before formal charges or indictment, but given the exigencies of this case, we hold that it was not necessary to afford Blue counsel at the Circle M lineup.[12]

## III. THE FAIRNESS OF THE LINEUP

■ We next consider the Circle M lineup in light of Blue's contention that the lineup was prejudicial and suggestive. The test we apply to the resolution of this issue is whether the lineup procedures were "so unnecessarily suggestive and conducive as to deny due process", the determination must be made based on the "totality of the circumstances."[13] Viewing the totality of the circumstances in this case, we cannot say that the lineup at the Circle M violated Blue's right to due process.

Blue does not attack the fairness of the lineup based on its suggestiveness given the physical characteristics of other members of the lineup. Significantly, the lineup included other tall men, all dressed in a similar fashion. Blue's attack focuses on the fact that Blue was the only tall person seated at the table with Benefield, the co-defendant. Since Ms. Nickens, the eyewitness, was looking for Benefield and recognized him immediately, the proximity of Blue to Benefield is argued to have been suggestive.

Under the facts of this case, we need not determine whether one defendant's proximity to another would ever be so suggestive as to violate due process. Here, the evidence shows that although Benefield and Blue were the only ones seated at the table, there were four people sitting close to Benefield. Furthermore, Blue could not be identified by Ms. Nickens when he was seated next to Benefield. It was not until later when all were asked to stand that the witness identified Blue as the other robber. Here, in addition to his appearance, the identification was based on the way Blue stood and moved. There is no argument made that Blue was placed next to Benefield in the standing lineup. While we think that the better practice is to avoid placing co-defendants in close proximity, we cannot say that under the "totality of circumstances" of this case, the lineup was so suggestive as to violate due process.

## IV. MR. HYATT'S HEARSAY STATEMENT

■ At trial, two officers testified on behalf of the state to statements made by a "Mr. Hyatt" to the effect that a third person had told Hyatt that the defendants had robbed the Club Manchu. Neither Mr. Hyatt nor the third person testified at trial or were available for cross-examination. Counsel for Blue made timely objections to the admission of the statements.

Blue claims that introduction of this statement is classic hearsay and violates his rights to confrontation as guaranteed by both the Alaska[14] and Federal Constitutions.[15]

---

**12.** We note that Blue was given his *Miranda* warnings which advised him of his rights to have counsel present and further advised him that if he could not afford counsel, one could be provided for him. Blue did not request counsel. Even when a lineup is conducted within a few hours after the commission of a crime, if the suspect in custody requests an attorney at the lineup, he should be provided an opportunity to call one. If the attorney can arrive within a reasonably short time so as not to interfere with a prompt and purposeful investigation, then no evidence will be lost. However, if an attorney cannot be available with reasonable promptness, we do not require the police to delay lineups if the delay might interfere with a prompt and purposeful investigation shortly after the commission of the offense.

**13.** *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967); *accord, Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); *Buchanan v. State,* 554 P.2d 1153, 1159 (Alaska 1976); *Noble v. State,* 552 P.2d 142, 146 (Alaska 1976); *McCracken v. State,* 521 P.2d 499, 502 (Alaska 1974); *Davis v. State,* 499 P.2d 1025, 1032 (Alaska 1972).

**14.** Art. I, Sec. 11 of the Alaska Constitution provides that "the accused shall have the right . . . to be confronted with the witnesses against him . . . ." The right to confront adverse witnesses is a fundamental right essential to a fair trial and includes the right to cross-examine such witnesses. *Evans v. State,*

We agree with Blue that the introduction of Hyatt's statement involves classic hearsay.[16] The inherent unreliability of hearsay statements raises special problems within the context of a criminal case since the out-of-court declaration also involves a defendant's constitutional right to cross-examine and confront the witnesses against him. In *Lemon v. State*, 514 P.2d 1151, 1153 (Alaska 1973), we stated:

> This right of confrontation protects two vital interests of the defendant. First, it guarantees him the opportunity to cross-examine the witnesses against him so as to test their sincerity, memory, ability to perceive and relate, and the factual basis of their statements. Second, it enables the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the inherent veracity of the witness is displayed in the crucible of the courtroom. (footnotes omitted)

We held in *Lemon, supra*, that except pursuant to one of the constitutionally acceptable exceptions to the hearsay rule, the use of out-of-court testimony "would reduce the right of cross-examination guaranteed by the confrontation clause to a nullity."[17] The right of cross-examination has been described as ". . . beyond any doubt

the greatest legal engine ever invented for the discovery of truth."[18]

The trial court admitted this hearsay evidence based on two theories. First, the trial court stated that the declarations were not hearsay because they were made in the defendant's presence. Second, the trial court stated that even if it was hearsay, it fit within an exception to the hearsay rule in that the statements were, by virtue of the defendant's responses, "adoptive admissions."[19] We hold the trial court erred on both grounds.

The fact that a statement is made in the presence of a defendant does not establish an exception to the hearsay rule, and the mere presence of a defendant does not obviate any of the confrontation problems we discussed in *Lemon, supra*. As stated by Professor McCormick:

> The presence or absence of the party against whom an out-of-court statement is offered has significance only in a few particular situations, e. g., when a statement spoken in his presence is relied upon to charge him with notice, or when failure to deny a statement spoken in his presence is the basis for claiming that he acquiesced in or adopted the statement. (Footnotes omitted)[20]

550 P.2d 830, 836–40 (Alaska 1976); *Hutchings v. State*, 518 P.2d 767, 768–69 (Alaska 1974); *Lemon v. State*, 514 P.2d 1151 (Alaska 1973); *Mead v. State*, 504 P.2d 855, 857 (Alaska 1972); *Doe v. State*, 487 P.2d 47, 57–58 (Alaska 1971); *R.L.R. v. State*, 487 P.2d 27, 44 (Alaska 1971); *Whitton v. State*, 479 P.2d 302, 317 (Alaska 1970); *Rubey v. City of Fairbanks*, 456 P.2d 470, 476–77 (Alaska 1969).

15. The sixth amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Since 1965, this provision has been fully applicable to the states under the fourteenth amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923, 926 (1965); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). *See Davis v. State*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347, 353 (1974).

16. This court has defined hearsay as "[e]vidence of a statement which is made other than

by a witness while testifying at the hearing offered to prove the truth of the matter stated". *P.H. v. State*, 504 P.2d 837, 843 (Alaska 1972), *quoting Meyst v. East Fifth Avenue Service, Inc.*, 401 P.2d 430, 437 n. 15 (Alaska 1965), *quoting* from Uniform Rules of Evidence, R. 63.

17. 514 P.2d at 1157.

18. 5 J. Wigmore, Evidence § 1367, at 32 (Chadbourne rev. 1974); *Evans v. State*, 550 P.2d 830, 836 (Alaska 1976).

19. The trial court did instruct the jury that the evidence was not to be considered for "the truth asserted therein".

20. McCormick on Evidence § 246, at 586 (2d ed. 1972). *See also Pinkard v. United States*, 99 U.S.App.D.C. 394, 240 F.2d 632, 633 (1957); *Kelley v. United States*, 99 U.S.App.D.C. 13, 236 F.2d 746, 749 (1956); *Childs v. Cardwell*, D.C., 320 F.Supp. 1365, 1371–72, *rev'd on other grounds*, 452 F.2d 541 (6th Cir. 1971), *cert. denied*, 407 U.S. 912, 92 S.Ct. 2447, 32 L.Ed.2d

The responses of the defendants furthermore do not fit the "adoptive admission" exception to the hearsay rule. Professor McCormick states:

> If a statement is made by another person in the presence of a party to the action, containing assertions of facts, which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak has traditionally been receivable against him as an admission. Whether the justification for receiving the evidence is the assumption that the party has intended to express his assent and thus has adopted the statement as his own, or the probable state of belief is to be inferred from his conduct is probably unimportant. Since it is the failure to deny that is significant, *an equivocal or evasive response may similarly be used against him on either theory, but if his total response adds up to a clear-cut denial this theory of implied admission is not properly available.* (footnotes omitted; emphasis added) [21]

In this case, the testimony indicates that both Blue and Benefield denied the accusations. In addition, Blue stated that if he and Benefield were accused of such acts, they might as well go and do them. We

hold that these responses are *not* adoptive admissions.[22] The response does not show an unequivocal intent to adopt the statement of Hyatt. To the contrary, the responses are implicit and explicit denials, and Hyatt's statements do not fit any exception to the hearsay rule.

Not only does this evidence violate the hearsay rule, it also violates the fundamental constitutional right that every defendant has to cross-examine and challenge his accuser. Here, the jury heard the accusation that Blue was involved in the robbery without an opportunity to view the demeanor of either Hyatt or the third party and without the benefit of Blue's cross-examination of them.[23] We hold that admission of Hyatt's statements was error.

We must next determine whether the error was reversible or harmless. Since the error is of constitutional dimensions involving the right of an accused to be confronted with the witnesses against him, the standard we must apply is whether the error was "harmless beyond a reasonable doubt." [24]

The hearsay declaration was not the only evidence linking Blue to the commission of the robbery. The state also presented an identification of Blue by Ms. Nickens and

687 (1972); *Caccitolo v. State,* 69 Wis.2d 102, 230 N.W.2d 139, 143 (1975).

21. McCormick on Evidence § 270, at 651–52 (2d ed. 1972). Because of the weakness of the correlation between guilt and an admission by silence or an equivocal or evasive response, the courts have imposed various conditions upon the introduction into evidence of a statement on the theory that it is an implied admission. To constitute proof of such an admission, the evidence must disclose that: 1) the statement was extrajudicial, 2) it was incriminatory or accusative in import, 3) it was one to which an innocent man would in the situation and surrounding circumstances naturally respond, 4) it was uttered in the presence and hearing of the accused, 5) he was capable of understanding the incriminatory meaning of the statement, 6) he had sufficient knowledge of the facts embraced in the statement to reply to it and 7) he was at liberty to deny it or reply to it. 29 Am.Jur.2d *Evidence* § 638, at 692 (1967); *see also* McCormick on Evidence § 270, at 652–53 (2d ed. 1972); *Watson v. State,* 387 P.2d 289, 291–92 (Alaska 1963). To this list should be

added that the defendant is not exercising a constitutional right to remain silent. A defendant's silence at a time when he is exercising a constitutional right to silence, e. g., after receiving a *Miranda* warning, cannot be offered as evidence against him at trial. *Doyle v. Ohio,* 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Impson,* 531 F.2d 274 (5th Cir. 1976). When confronted with incriminating statements by another person in such circumstances, the defendant's silence cannot be held to be an adoption of such statements. *See e. g., Glinsey v. Parker,* 491 F.2d 337, 342 (6th Cir. 1974).

22. *See, e. g., Village of New Hope v. Duplessie,* 231 N.W.2d 548, 551–53 (Minn.1975) (defendant's nodding head and laughing in face of incriminating statement equivocal and therefore not an adoptive admission).

23. *See Lemon v. State, supra.*

24. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967); *Evans v. State,* 550 P.2d 830, 840 (Alaska 1976).

testimony with respect to threads on Blue's jacket which might have tended to show that a patch had been removed. Finally, Blue admitted that he spent the evening of the robbery with Benefield, who was strongly identified by Ms. Nickens. The strength of this evidence, however, is questionable. Ms. Nicken's eyewitness identification of Blue was not a strong one. While Ms. Nickens identified Blue at trial, she originally was unable to identify Blue at the Circle M Bar. It was not until Blue stood up and moved about that she could recognize him. At the second lineup in district court, Ms. Nickens was unable to identify Blue at all, and one witness, Mr. Haskins, excluded Blue as a possible robber. The evidence of the patches on Blue's coat was also equivocal. There was no evidence that anyone ever saw Blue with patches on his coat. The police officers also stated at trial that although some stitch marks were visible on the jacket, the outlines of a patch which they previously had observed could no longer be detected. While the police took swab tests and fingerprints from shell casings and money, none of this evidence was sent to a laboratory or introduced into evidence. In light of the nature of the eyewitness identification and the equivocal evidence, we cannot say that the hearsay statement did not influence the jury's decision and was "harmless beyond a reasonable doubt." [25]

The decision of the trial court is therefore reversed, and the case is remanded for a new trial.

25. *Chapman v. California, supra; Evans v. State, supra.*