ANCHORAGE, a Municipal Corporation, Appellant,

v.

Arthur GEBER, Appellee.

David EARLEY, Appellant,

v.

STATE of Alaska, Appellee.

Jennie L. WILLIS, Petitioner,

v.

ANCHORAGE, a Municipal Corporation, Respondent.

ANCHORAGE, a Municipal Corporation, Petitioner,

v.

Jerry Dean BUFFINGTON, Respondent.

Nos. 4016, 4037, 3827 and 4046.

Supreme Court of Alaska.

March 30, 1979.

Douglas B. Baily, Dunn, Baily & Mason, Anchorage, for appellee Geber.

Craig Cornish, Asst. Public Defender, Brian C. Shortell, Public Defender, Anchorage, for appellant Earley.

Roger W. DuBrock, Wade & DuBrock, Anchorage, for petitioner·Willis.

Joseph W. Evans, Birch, Horton, Bittner & Monroe, Anchorage, for respondent Buffington.

Allen M. Bailey, Municipal Pros., Anchorage, Donald L. Starks, Municipal Prosecutor, Anchorage and Theodore Berns, Municipal Atty., Anchorage, for appellant, petitioner and respondent Anchorage, a Municipal Corp.

Monica Jenicek and Mary Anne Henry, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for State.

Before BOOCHEVER, C. J., RABINOWITZ, and BURKE, JJ., DIMOND, Senior Justice, and COMPTON, Superior Court Judge.

## OPINION

BURKE, Justice.

 The main issue in each of four· cases [1] now before us is whether, in prosecuting a charge of operating a motor vehicle while under the influence of intoxicating liquor, law enforcement officials can utilize the results of a blood alcohol test, when the blood used in performing the test was extracted from the accused against his or her will, after refusal to submit to a breathalyzer examination. A second issue, found in only one of the cases, is whether the suspect has a right to have counsel present during the video taping of field sobriety tests performed at the request of the arresting officer.[2] On the main issue, we hold that the extraction and testing of blood under these circumstances has been prohibited by the legislature's enactment of AS 28.35.031–.033. On the second issue, we hold that there is no right to have counsel present.

In separate incidents, Arthur Geber, David Earley, Jennie L. Willis and Jerry Dean Buffington were arrested on charges of operating a motor vehicle while under the influence of intoxicating liquor. Geber, Willis and Buffington were charged with violations of a municipal ordinance, section 9.28.020 of the Code of Ordinances of the Municipality of Anchorage.[3] Earley was charged with a violation of state law, AS 28.35.030.[4] After refusing to submit to

1. In the interest of judicial economy these cases have been consolidated for purposes of our review.

2. No other issue as to the legality of the videotaping has been raised.

3. Section 9.28.020 provides:

 *Driving While Under the Influence of Intoxicating Liquor or Drug.* A person who, while under the influence of intoxicating liquor, depressant, hallucinogenic, stimulant or narcotic drugs, as defined in AS 17.10.230(13) and AS 17.12.150(3), operates, drives or is in actual physical control of an automobile, motorcycle or other motor vehicle in the municipality, upon conviction, is punishable by a fine of not more than $1,000.00 or by imprisonment for not more than one year, or by both; however upon conviction the court shall impose a sentence of at least 24 hours imprisonment. Upon a second conviction within five years after a first conviction under this section, Section 9.28.030 of this code, or under a statute of the State of Alaska or an ordinance of another municipality proscribing a similar offense, the court shall im-

pose a minimum sentence of not less than three days. Upon a subsequent conviction within five years after a second conviction under this section, Section 9.28.030 of this code or under an Alaska Statute or ordinance of another municipality proscribing a similar offense, the court shall impose a minimum sentence of imprisonment of not less than 10 days. The execution of sentence may not be suspended nor may probation˙ or parole be granted until the minimum imprisonment provided in this section has been served, nor may imposition of sentence be suspended, except upon the condition that the defendant be imprisoned for no less than the minimum period provided in this section, nor may the punishment provided for in this section be reduced under AS 11.05.150. In addition, the *operator's license shall be revoked in accord-*ance with AS 28.15.210(c).

4. AS 28.35.030 provides:

 *Driving while under the influence of intoxicating liquor or drugs.* A person who, while under the influence of intoxicating liquor, depressant, hallucinogenic or stimulant drugs or narcotic drugs as defined in AS 17.10.-

breathalyzer examinations, Geber, Earley and Buffington were transported to medical facilities where, over their objection, blood samples were extracted for the purpose of testing for the presence of alcohol. Following her arrest, Willis was immediately transported to a hospital where, after initially refusing to do so, she submitted to the extraction of her blood after being informed by police that if she continued to refuse it would be taken forcibly. Thereafter, Willis was transported to the police station where she was ordered to perform certain field sobriety tests. As she performed the various tests a video tape was made of her actions. At that point she was also offered an opportunity to take a breathalyzer test but refused to do so.

The blood test performed as to each of the four defendants revealed the presence of alcohol. Each moved in district court for an order suppressing the results of the blood tests. These motions produced conflicting results in both the district and superior courts.[5] Eventually, the rulings in each case became the subject of an appeal[6] or petition for review[7] to this court.

In 1969, the legislature of Alaska enacted what is commonly known as the Alaska Implied Consent Statute. Ch. 83, § 1, SLA 1969. This enactment, codified as AS 28.-35.031–.034, is entitled: "An act relating to chemical tests as to alcoholic content of blood when operating or driving a motor vehicle under the influence of intoxicating liquor." It amended AS 28.35 by adding several new sections, including the following:

> *AS 28.35.031. Implied consent.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to *a chemical test or tests of his breath* for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle

230(13) and AS 17.12.150(3) operates or drives an automobile, motorcycle or other motor vehicle in the state, upon conviction, is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both. Upon a second conviction within five years after a first conviction under this section, the court shall impose a minimum sentence of imprisonment of not less than three days. Upon a subsequent conviction within five years after a second conviction under this section, the court shall impose a minimum sentence of imprisonment of not less than 10 days. The execution of sentence may not be suspended nor may probation or parole be granted until the minimum imprisonment provided in this section has been served, nor may imposition of sentence be suspended, except upon the condition that the defendant be imprisoned for no less than the minimum period provided in this section, nor may the punishment provided for in this section be reduced under AS 11.05.150. In addition, his operator's license shall be revoked in accordance with AS 28.-15.210(c).

**5.** Geber's motion was denied by the district court, but that ruling was reversed by the superior court on appeal. The Municipality of Anchorage then appealed the superior court's order to this court. Earley's motion to suppress

was denied by the district court and that ruling was affirmed on appeal to the superior court. Earley then appealed to this court. Willis' motion to suppress the results of the blood alcohol test was denied by the district court. In addition the district court denied her motion to suppress evidence of the video tape made of her performance for the field sobriety test upon the grounds that she had been denied the right to counsel. Willis then petitioned for review of both rulings by the superior court. The petition was denied. Willis then petitioned this court for review. Her petition was granted and trial of the case stayed pending resolution of the issues presented on their merits. Buffington's motion to suppress was granted by the district court. The Municipality then filed a petition for review in superior court. Although the superior court stated in its subsequent order that the petition for review was denied, it appears that, in fact, the superior court affirmed the ruling of the district court on its merits. The Municipality then petitioned for review by this court. It appears that Buffington's trial was stayed pending our resolution of the issue presented.

**6.** *See* Rules 5 and 45, Alaska R.App.P.

**7.** *See* Rules 23 and 24, Alaska R.App.P.

in this state while under the influence of intoxicating liquor. [Emphasis added.] *AS 28.35.032. Refusal to submit to chemical test.* (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in § 31 of this chapter, after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license, *a chemical test shall not be given.* [Emphasis added.]

Simply stated, the question in the cases at bar is whether the language of AS 28.35.032(a), providing that, upon a person's refusal to submit to a chemical test of his breath, "*a chemical test shall not be given,*" means that law enforcement officials are precluded from performing other chemical tests in order to determine whether alcohol is present in the person's blood.

In 1969, Senator Lowell Thomas, Jr., introduced Senate Bill No. 23. It was this bill, after subsequent revisions, which was destined to become Alaska's Implied Consent Statute. As originally introduced, the bill would have amended AS 28.35 by adding, among other things, the following:

*Section 28.35.031. IMPLIED CONSENT.* (a) A person who operates a motor vehicle in this state shall be considered to have given consent, subject to the provisions of sec. 33 of this chapter, to *a chemical test or tests of his blood, breath or urine* for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle in this state while under the influence of intoxicating liquor. The Department of Public Safety shall designate which of the tests shall be administered.

(b) A person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be considered not to have withdrawn the consent provided by (a) of this section, and the test or tests may be administered, subject to the provisions of sec. 33 of this chapter.

*Section 28.35.032. REFUSAL TO SUBMIT TO CHEMICAL TEST.* If a person under lawful arrest refuses, upon the request of a law enforcement officer, to submit to a chemical test designated by the Department of Public Safety as provided in sec. 31(a) of this chapter, *none may be given*; but if he does so refuse, evidence of his refusal shall be admissible in a civil or criminal action or proceeding arising out of acts alleged to have been committed while he was driving or in actual physical control of a motor vehicle in this state while under the influence of intoxicating liquor. [Emphasis added.]

S.B. 23, 6th Leg., 1st Sess. (original version Jan. 28, 1969). It should be noted that Senator Thomas' bill provided for implied consent to tests of the blood, breath or urine, and specifically stated that "none may be given" in the event of a refusal. We think it also important that his bill provided that evidence of an individual's refusal could be used in a civil or criminal proceeding arising out of the arrest.

On February 13, 1969, the Senate Health, Welfare, and Education Committee introduced a committee substitute for Senate Bill No. 23. C.S.S.B. 23, 6th Leg., 1st Sess. (Feb. 13, 1969). The committee substitute, like the original bill, provided that consent was deemed given to blood, breath or urine tests. However, a change was made in AS 28.35.032(a), dealing with refusals to submit to chemical tests. In particular, the committee substitute provided (emphasis added):

*Section 28.35.032. REFUSAL TO SUBMIT TO CHEMICAL TEST.* (a) If a person . . . refuses . . . to submit at least *to a chemical test of his breath* as provided in sec. 31(a) of this chapter and the acts allegedly committed while the person was operating a motor

vehicle while under the influence of intoxicating liquor did not result in an accident causing serious bodily injury or death to a person other than himself, *a chemical test shall not be given.*

The committee substitute also provided, for the first time, for license suspension or revocation for a refusal to submit to the required chemical test or tests. The period of suspension or revocation was deemed to be six months. Evidence of the individual's refusal to submit to a chemical test or tests continued to be admissible in a civil or criminal action.

On March 18, 1969, the Senate Judiciary Committee introduced yet another committee substitute for Senate Bill No. 23. C.S. S.B. 23 am, 6th Leg., 1st Sess. (Mar. 18, 1969). Under this version a driver was only "considered to have given consent to a chemical test or tests of his breath." All references to testing of blood or urine were dropped. *Id.*, sec. 28. 35.031. In addition, the license revocation or suspension period was reduced to three months and the right to use evidence of refusal in a civil or criminal action was omitted. *Id.*, sec. 28.-35.032(b). The language of AS 28.35.032(a) was changed to read:

> If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in sec. 31 of this chapter, after being advised by the officer that his refusal will result in a suspension, denial or revocation of his license, a chemical test shall not be given.

Senator Merdes offered an amendment to the Senate Judiciary Committee's substitute bill. His amendment would have added, at the end of AS 28.35.031, the following language:

> A vehicle operator shall have the option of voluntarily taking a blood test in lieu of the chemical test of the breath if a qualified person including a physician or nurse selected by the vehicle operator, is immediately available.

On a voice vote, the amendment failed. 1969 Senate Journal 406.

A committee substitute of the House Committee on Health, Welfare and Education was introduced on April 5, 1969. H.C. S.C.S.C.S.S.B. 23, 6th Leg., 1st Sess. (April 5, 1969). The House substitute provided only for a chemical test of the breath and stated that, if there was a prior conviction for operating a motor vehicle while intoxicated within the past five years, a refusal to take the breath test would result in a one year license revocation. *Id.*, sec. 28.35.032(a) & (d).

A free conference committee was finally established to iron out the differences between the Senate and House versions of this bill, and the free conference committee's substitute bill, which was to ultimately become Alaska's Implied Consent Statute, provided for chemical tests of the breath only; contained language that once a refusal had been given to a chemical test of the breath, a chemical test should not be given; and provided that, if there was a prior conviction within two years for operating a motor vehicle while under the influence of intoxicating liquor and the individual refused the breath test, a one year license revocation would be imposed. H.C.S.C.S.S.B. 23 am F.C.C., 6th Leg., 1st Sess. (April 5, 1969).

The express language of AS 28.-35.032(a), coupled with the legislative history described above, leads us to the conclusion that in enacting the Implied Consent Statute the legislature intended that once a breath test had been refused no other chemical test would be allowed. We interpret the language of AS 28.35.032(a), stating that after refusal to submit to a test of the breath "a chemical test shall not be given," to mean *any* chemical test, be it of the breath, blood, urine or otherwise. Thus, we reject the state and municipality's argument that such language means only that no other chemical test of the breath shall be given.

To the extent that our holding in these cases is inconsistent with anything stated in our opinion in *Layland v. State*, 535 P.2d

1043 (Alaska 1975), the decision in that case is overruled.[8]

Further comment is perhaps necessary concerning the taking of blood from Jennie L. Willis, since her refusal to take a breathalyzer examination came *after* the blood sample was extracted from her body. In our view, the fact that she had not yet refused a breath test is of no significance. As we interpret the Implied Consent Statute, it was intended to provide an exclusive method for obtaining direct evidence of a suspect's blood alcohol content, absent his or her express consent to the use of some other form of testing.

Willis also contends that, before requiring her to perform certain field sobriety tests, the police should have informed her that she had the right to have an attorney present if she could obtain his presence within a reasonable period of time. She argues that such action "is mandated by the decision of [this] court in the case of *State v. Blue [Blue v. State]*, 558 P.2d 636 (Alaska 1977)."

In *State v. Roberts*, 458 P.2d 340 (Alaska 1969), we stated that we would not be guided solely by federal authority in determining the right to counsel under the Alaska constitution, and held that a defendant was entitled to have an attorney present during the taking of handwriting exemplars. Thereafter, in *State v. Blue*, 558 P.2d 636 (Alaska 1977), we stated that there was a right to have counsel present at a pre-indictment lineup "unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation." 558 P.2d at 642

(footnote omitted). We also stated that "if the suspect in custody requests an attorney at the lineup, he should be provided an opportunity to call one." *Id.* at 643 n.12.

Field sobriety tests are used to determine whether a suspect has used alcohol and, if so, the degree to which his mental and physical skills have been impaired. It is common knowledge that one's ability to perform such tests is influenced by the percentage of alcohol in his or her blood, and that that percentage diminishes with the passage of time. Such being the case, if the tests are to provide any real indicator of the degree of impairment, if any, existing at the time of the alleged offense, they must be performed as soon thereafter as possible. This fact alone distinguishes such cases from the usual lineup situation or the taking of handwriting exemplars, where the passage of a few hours would have little or no effect.

We think it would be both impractical and unreasonable to impose upon the police the requirement urged by Willis. Thus, we reject her argument that she should have been advised that she had the right to have counsel present before being asked to perform the field sobriety tests administered to her. No such requirement is mandated by any of our past decisions or any provisions of the Constitution of Alaska.

CONNOR and MATTHEWS, JJ., not participating.

8. In *Layland* we accepted a concession by the parties "that a chemical test of a driver's breath is not the exclusive means of attempting to discover and prove a driver's blood alcohol content." 535 P.2d at 1046 n.13. That concession was based on AS 28.35.033(c), which provides:

> The provisions of (a) of this section [detailing the statutory presumptions derived from breath test results] may not be construed to limit the introduction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor.

In *Layland* we said, "In our view [the Implied Consent] statute does not preclude the introduction of blood test results in circumstances where the taking of the blood sample did not violate any of the accused's constitutional rights." 535 P.2d at 1046 n.13.

The issue in *Layland* was whether the warrantless taking of a driver's blood, over his objection and after his refusal to submit to a breathalyzer examination, violated the search and seizure provisions of the fourth amendment to the Constitution of the United States and art. I, § 14 of the Constitution of the State of Alaska. The limiting effect of AS 28.35.-032(a) was neither argued by the parties nor discussed in our opinion.

In retrospect we believe that the parties' concession in *Layland* was ill advised. Therefore, we will not be bound by it here.