**John W. PALMER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3651.**

Supreme Court of Alaska.

Dec. 28, 1979.

Peter A. Galbraith, Galbraith & Frost, Anchorage, for appellant.

Mary Anne Henry, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Craig M. Cornish, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant/amicus curiae.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

After trial by jury in the district court, John W. Palmer, appellant, was convicted of the crime of operating a motor vehicle while under the influence of intoxicating liquor. See AS 28.35.030. Upon entry of a final judgment he appealed to the superior court where his conviction was affirmed. This appeal followed.

### I

Palmer's first contention is that the trial court erred in refusing to suppress evidence of a videotape recording made at trooper headquarters following his arrest.[1] Among other things, the recording portrayed Palmer while a breathalyzer examination was

---

1. District Court Judge Laurel Peterson ruled on appellant's pre-trial motion to suppress, as well as his motion to dismiss the complaint. District Court Judge Alexander Bryner presided over the trial.

**1108**

being administered to him and while he performed other sobriety tests, some involving verbal skills. In support of his argument that this evidence should have been suppressed, Palmer advances several theories.

a. *Right to a warning.*

■ Palmer contends that, as a matter of due process and fundamental fairness, he was entitled to a warning that his actions were being videotaped. *See Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, 1602 (1942). He cites no direct authority for this argument and we know of none. Accordingly, under the circumstances shown by the evidence in this case, we hold that no warning was required on these grounds.[2]

b. *Right of privacy.*

Palmer next contends that such a warning was required by article I, section 22, of the Constitution of the State of Alaska, which specifically guarantees to every citizen of the state a right to privacy.[3] In *Smith v. State,* 510 P.2d 793, 797 (Alaska), *cert. denied,* 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973), prior to the adoption of article I, section 22, we considered whether there was a constitutionally protected right of privacy under the search and seizure clause of the state constitution, article I, section 14. In *Smith* we approved the test articulated by Mr. Justice Harlan in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), for determining whether a reasonable expectation of privacy exists: "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring). *See also Nathanson v. State,* 554 P.2d 456 (Alaska 1976). In *State v. Glass,* 583 P.2d 872, 880 (Alaska 1978), we held that the privacy amendment, Alaska Const., art. I, § 22, prohibited the electronic recording of a narcotics transaction. We concluded that the defendant's subjective expectation that his conversations with a police informant would not be secretly recorded was one that society recognized as reasonable.[4]

■ We think the situation in the case at bar, however, is readily distinguishable. When the videotape recording was made, Palmer was already under arrest. After being transported to police headquarters, he was asked to submit to a breathalyzer examination and to perform a number of sobriety tests. Assuming, *arguendo,* that he had any actual or subjective expectation at that point that his actions would not be recorded, we are convinced that that expectation is *not* one that society is prepared to recognize as reasonable. Accordingly, we hold that there was no violation of the right of privacy guaranteed to Palmer by article I, section 22, of the state constitution.[5]

c. *Self-incrimination and duty of disclosure.*

Palmer further contends that recording his actions on videotape without his knowledge was a violation of his privilege against self-incrimination and a breach of the prosecutor's duty to disclose evidence favorable

2. No reason has been suggested to us why such a warning should not be given. Absent some demonstrated justification for the failure to do so, we think the better practice would be to advise the arrested person that his or her actions are being videotaped.

3. Alaska Const., art. I, § 22, provides: "The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section."

4. The holding in *Glass* was by a 4 to 1 majority. The author of the present opinion dissented.

5. Palmer also contends that it was a violation of AS 11.60.290 for the police to videotape his actions and record his voice. AS 11.60.290 provides in pertinent part: "It is unlawful for a person to (1) use an eavesdropping device to hear or record all or any part of an oral conversation without the consent of a party to the conversation[.]" This statute is clearly intended to prohibit third-party eavesdropping and is therefore not applicable to the situation in the case at bar where one of the participants recorded the conversation.

to the accused. Criminal Rule 16(b)(3) provides: "The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor." Palmer argues that this rule, in combination with minimal requirements of due process, requires the *police* to inform one arrested for driving while intoxicated that his actions are being videotaped "so that the individual can perform at his best." This argument, in our judgment, is frivolous.

Palmer's self-incrimination argument is that, since he was not advised of either his *Miranda* rights or the fact that he was was being videotaped prior to being asked to perform the actions that were recorded, the recording, or at least the audio portion thereof, should have been suppressed. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States held that evidence obtained as a result of custodial interrogation of an accused is inadmissible against him in a state court unless it can be demonstrated that he was advised of his fifth amendment right to remain silent and his sixth amendment right to have an attorney present during questioning: "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726 (footnote omitted). In *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979), we held that the police were not required to advise one arrested for driving while intoxicated of the right to have counsel present before they administered and videotaped certain field sobriety tests at the police station. Our opinion in that case, however, did not suggest that the *Miranda* requirements can be ignored where the tape contains evidence of statements or events to which those requirements are otherwise applicable. Thus, for example, where an accused confesses to a crime as a result of custodial interroga-

tion by the police, a videotape recording of his confession would be inadmissible unless the interrogation leading to that confession were preceded by a proper *Miranda* warning.

In the case at bar, the videotape begins with Palmer taking the breathalyzer test. The tape then shows Palmer performing several physical tests designed to determine whether, and to what extent, he was under the influence of intoxicating liquor. The tape shows that when asked to perform the "walk the line test," Palmer complained of problems with his hip. The trooper administering the tests then informed Palmer that the breathalyzer test results indicated that he had a blood alcohol level of .16%.[6] To this, Palmer replied, "Oh no."

The fifth amendment offers no protection against compulsion to take the sort of tests administered to Palmer in this case. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Moreover, even if the statements made by the accused were testimonial in character, as argued by Palmer, they were not the product of the sort of custodial "interrogation" that requires a *Miranda* warning. *See Hunter v. State*, 590 P.2d 888 (Alaska 1979).

Even if Palmer's utterances were erroneously admitted into evidence, however, the error was harmless beyond a reasonable doubt. Considering the statements along with the other evidence in the case, we see no reasonable possibility that those statements contributed to the jury's verdict. *See* Rule 47(a); Alaska R.Crim.P.; *Love v. State*, 457 P.2d 622, 633 (Alaska 1969).

## II

As 28.35.033(e) provides that a person who is required to submit to a breathalyzer examination may obtain an independent blood alcohol test:

under the influence of intoxicating liquor. AS 28.35.033(a)(3).

---

**6.** When the blood alcohol level is 0.10 percent or more, it is presumed that the person was

The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable so to do, is likewise admissible in evidence.

Palmer was not advised of his right to obtain an independent test, and he now contends that the results of the breathalyzer examination were therefore inadmissible. The statute, however, contains no requirement that such advice be given, and we are not persuaded that it is required by any provision of the state or federal constitution. *See People v. Thornton*, 9 Mich.App. 536, 157 N.W.2d 490 (1968); *People v. Kerrigan*, 8 Mich.App. 216, 154 N.W.2d 43 (1967); *State v. Myers*, 88 N.M. 16, 536 P.2d 280 (1975); *State v. Osburn*, 13 Or.App. 92, 508 P.2d 837 (1973); *Caldwell v. Commonwealth*, 205 Va. 277, 136 S.E.2d 798 (Va. 1964). *Compare Wirz v. State*, 577 P.2d 227, 230 (Alaska 1978).[7]

### III

Palmer next contends that due process requires that a person in his position be advised that he has a right to refuse to submit to a breathalyzer examination. *See* AS 28.35.032(a); *Anchorage v. Geber*, 592 P.2d 1187 (Alaska 1979).

While AS 28.35.032(a) prohibits the giving of any other blood test when the person arrested refuses to submit to a breathalyzer examination, *Anchorage v. Geber*, 592 P.2d at 1191, it does not otherwise grant or recognize a *right* on the part of the arrested person to refuse that examination.[8] Since the legislature has not imposed a specific requirement that the person be informed that he has a right to refuse the breathalyzer examination, we have held that there is no statutory requirement that such advice be given. *Wirz v. State*, 577 P.2d 227, 230 (Alaska 1978). We are equally unpersuaded that such advice is required as a matter of constitutional due process.

### IV

■ During the trial of the case, the district court refused a defense request to exclude the arresting officer from the courtroom. *See* AS 09.20.180; Rule 43(g)(3), Alaska R.Civ.P.[9] The record convinces us that the court did not abuse its discretion in ruling as it did. Accordingly, there was no error. *See Dickens v. State*, 398 P.2d 1008 (Alaska 1965).

### V

Palmer sought to introduce expert testimony concerning procedures utilized in other states and in Canada to increase or guarantee the accuracy of breathalyzer examinations, particularly the practice of administering a second test to see how it compares to the first. The techniques, methods, and standards pertaining to breathalyzer examinations in Alaska have been established by the legislature and administrative regulations adopted by the Department of

---

7. We also reject Palmer's suggestion in that the failure of the police to inform him of his right to an independent blood test violated Criminal Rule 16(b)(3). A similar argument, discussed in Part I(c) of this opinion, was deemed frivolous.

8. There is a statutory requirement that the arrested person be advised that refusal to submit to a breathalyzer examination may result in the suspension, revocation or denial of his driver's license by the Department of Public Safety. AS 28.35.032(b). If he is not so advised, any

such action by the department can be rescinded by the district court. AS 28.35.032(c).

9. AS 09.20.180 provides: "Upon the request of either party the judge may exclude from the court room any witness of the adverse party not under examination at the time so that he may not hear the testimony of other witnesses." Similar language is contained in Civil Rule 43(g)(3), which is made applicable to criminal proceedings by Rule 26(a), Alaska R.Crim.P.

Health and Social Services. *See* AS 28.35.-033; 7 AAC 30.010–.080. In this appeal, Palmer makes no claim that the state did not comply with these techniques, methods, and standards.

■ To the extent that the evidence merely established that other procedures are utilized elsewhere, it was irrelevant and properly excluded. In any event, the district court held extensive hearings on the nature and content of the proffered testimony, and there was no showing that the breathalyzer test in question suffered from any of the defects to be testified to by the expert witness. Thus, while the excluded evidence may have had some probative value on the issue of the probable accuracy of the test administered to Palmer, we are unable to say that the district court erred in ruling as it did.

### VI

After stopping Palmer's vehicle, the arresting officer, before formally placing him under arrest, asked Palmer how much he had had to drink. Palmer replied that he had had "five or six beers." This exchange occurred before Palmer was advised of his right to remain silent. At trial, Palmer's attorney moved to suppress this evidence, claiming that its introduction would violate his client's constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Assuming, *arguendo*, that there was a *Miranda* violation, we conclude that the statement, if it was incriminating, merely corroborated other evidence at trial which, standing alone, would have been more than sufficient to convict Palmer of the offense charged. If it was error to admit the statement, such error was harmless beyond a reasonable doubt, since we see no reasonable possibility that that evidence contributed to the jury's verdict. *Love v. State*, 457 P.2d 622, 633 (Alaska 1969).

### VII

■ Palmer's final contention is that the superior court erred in refusing to stay that portion of the district court's sentence suspending his driver's license for a period of thirty days, pending the outcome of his appeal to this court. The decision whether to grant or deny such a stay is one that is properly left to the sound discretion of the superior court. We have determined that the court did not abuse its discretion and, therefore, conclude that there was no error.

AFFIRMED.

RABINOWITZ, Chief Justice, concurring.

I concur in the majority opinion. However, as to any violation of Palmer's constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) during the initial traffic stop, my analysis differs from that employed by the majority.

Palmer alleges error in the admission of testimony that when he was initially stopped by the police, he was asked how much he had had to drink and replied, "five or six beers." This statement was made prior to any giving of *Miranda* warnings or any waiver of Palmer's right to remain silent and not be questioned. The majority concludes, after assuming arguendo a *Miranda* violation occurred, that the error was harmless because it was merely cumulative, corroborating other evidence sufficient to convict. Violation of *Miranda* protections is federal constitutional error. As we stated in *Rubey v. Fairbanks*, 456 P.2d 470 (Alaska 1969), to determine whether a constitutional error is harmless, this "court must be able to declare a belief beyond a reasonable doubt that the error was harmless—that it did not contribute to the verdict obtained." *Id.* at 477.

In this case, after exhibiting erratic driving behavior, Palmer admits to having drunk "five or six beers." I think that this admission is of such importance that reasonable doubt exists as to whether it contributed to the verdict. An accused's statement as to his or her activities carries significant weight with the jury. Admitting to considerable consumption of alcohol in the context of this case amounts to an admission of one of the elements of the

charged offense. Thus, since I would find reversible error if Palmer's *Miranda* rights were violated it becomes necessary to decide whether the admission in question was uttered under circumstances amounting to custodial interrogation.

In *Hunter v. State*, 590 P.2d 888, 895 (Alaska 1979), we adopted an objective, reasonable person test for determination of custodial interrogation requiring *Miranda* warnings. In that case we held that there must be some actual indication of custody, such that a reasonable person would not feel free to leave and break off police questioning. We stated in *Hunter* that custodial determinations must be made on a case-by-case basis and outlined three groups of factors which are to be considered when examining a particular factual setting:

> At least three groups of facts would be relevant to this determination. The first are those facts intrinsic to the interrogation: when and where it occurred, how long it lasted, how many police were present, what the officers and the defendant said and did, the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door, and whether the defendant was being questioned as a suspect or as a witness. Facts pertaining to events before the interrogation are also relevant, especially how the defendant got to the place of questioning—whether he came completely on his own, in response to a police request, or escorted by police officers. Finally, what happened after the interrogation—whether the defendant left freely, was detained or arrested—may assist the court in determining whether the defendant, as a reasonable person, would have felt free to break off the questioning.

*Id.* at 895 (footnotes omitted). Based upon my study of the record I conclude that Palmer was not in custody at the time he was asked how much he had to drink. The arresting officer testified that the reason that he pulled Palmer's vehicle over was that it was weaving back and forth and crossing the centerline. Officer Murphy testified that once he effected a traffic stop of Palmer:

> I asked him how much he'd had to drink. He stated at that time, five or six beers. I asked him where he'd been, if this was his house, listened to him talk. I believe I asked him to walk a straight line and recite the alphabet for me at the scene. When that was completed, I arrested him for OMVI.

Thus, at the point at which Murphy asked Palmer how much he had been drinking, all the information the officer had was the weaving in Palmer's driving Murphy had observed. Such a driving pattern could have been caused by any of a number of factors, including the impairment of the driver's faculties. It was only with additional questioning, observance of Palmer's demeanor, and Palmer's performance of the field sobriety tests that Murphy concluded there was sufficient probable cause to arrest Palmer.

Therefore, I conclude that this questioning falls under the on-the-scene questioning exception to the *Miranda* rule. This court discussed the parameters of that exception in *Ripley v. State*, 590 P.2d 48 (Alaska 1979), and *Pope v. State*, 478 P.2d 801 (Alaska 1970). The purpose of the exception is to facilitate the traditional function of police officers in investigating crime. General, on-the-scene questioning to determine whether a crime has been committed does not require *Miranda* warnings. In *Pope v. State*, 478 P.2d 801, 805 (Alaska 1971), we articulated several factors considered in determining whether there was an on-the-scene questioning exception:

> But the case at bar is a strong one for applying the "on-the-scene questioning" exception to the *Miranda* warning requirement. The officer here was presented with a situation of great emergency. A crime of violence had occurred, the victim was lying on the ground dead. There was more than one person present. Both to protect his own safety and that of others, the officer had to elicit information about what had happened, and about the gun which had obviously been used in the killing.

Although the circumstances surrounding the scene of a violent crime are far different from a traffic stop the general principle is equally applicable. Police should be free to ask questions to determine what has happened. Only then can an officer exercise judgment as to what action to take. Again, each case turns on its particular facts. At some point, the on-the-scene questioning may become a custodial interrogation. *See State v. Darnell*, 8 Wash.App. 627, 508 P.2d 613, 615 (Wash.App.1973), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 842, 38 L.Ed.2d 739; *United States v. LeQuire*, 424 F.2d 341, 343–44 (5th Cir. 1970).

I conclude that the circumstances in this case did not amount to custodial interrogation. Therefore, I can agree with the majority that there was no error in the admission of Palmer's statement.

BOOCHEVER, Justice, concurring.

With reference to the videotaping and recording of the sobriety tests at the police headquarters, I am of the opinion that one in defendant's position would have had no actual or subjective expectation of privacy. From all indications, the testing was performed in a public area and not in a private room which might give rise to such an expectation. Moreover, the vary nature of the testing was for the obvious purpose of making the results public. Therefore, I would rest the holding that there was no violation of Palmer's right to privacy on the lack of subjective expectation of privacy.

I am not at all sure that if the circumstances were such as to give rise to an actual and subjective expectation of privacy, that society would not be prepared to recognize such an expectation as reasonable. A sense of fairness based on a requirement of being open and above board would seem to require notification that one's actions are being videotaped and recorded, if the testing were performed under circumstances giving rise to a subjective expectation of privacy. *See State v. Glass*, 583 P.2d 872 (Alaska 1978).

I further would not speculate as to whether a *Miranda* warning would be required if the statements of the accused made during the testing are regarded as testimonial in character. The trooper indicated that the breathalyzer test results indicated that Palmer had a blood alcohol level of .16 percent, to which Palmer replied "Oh no." That exclamation could hardly be regarded as incriminating, and I find it unnecessary to make any general holding as to whether the remarks were the result of custodial interrogation so as to require a *Miranda* warning. There are too many factual variations which may arise to justify such a sweeping holding. For example, a police officer could give a false statement of a high breathalyzer reading hoping to elicit an admission of where a defendant had been drinking or some statement as to the amount consumed. Even under the circumstances here involved, had Palmer answered "I only had six drinks," a close question would be presented. There can be no dispute of the fact that Palmer was in custody.[1] The United States Supreme Court has held that direct questioning is not required to trigger the requirement of *Miranda* warnings. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

---

1. *See Hunter v. State*, 590 P.2d 888 (Alaska 1979).