Laurence James O'NEILL, Appellant,

v.

STATE of Alaska, Appellee.

No. 7720.

Court of Appeals of Alaska.

Jan. 27, 1984.

Allan Beiswenger, Soldotna, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

PER CURIAM.

Laurence James O'Neill was charged with interfering with an arrest, AS 11.56.-700(a)(3), and assault in the fourth degree, AS 11.41.230(a)(1). On April 6, 1983, the two charges were joined and tried by jury before the Honorable Jess H. Nicholas, Magistrate. O'Neill was convicted. He appeals, challenging the introduction into evidence of a tape recording of the incident. We affirm.

After the state completed cross-examination of the first defense witness, the district attorney advised the court that the arresting officer had tape-recorded the events that led to O'Neill's arrest. O'Neill's counsel moved to suppress the tape. The court denied the motion and granted a continuance to give O'Neill's counsel an opportunity to listen the tape.

Trial then proceeded and numerous witnesses were examined. After the jury retired to deliberate, O'Neill moved for a mistrial. That motion was denied. The jury found O'Neill guilty of both charges. Before sentencing, O'Neill moved for a new trial pursuant to Criminal Rule 33. The motion was denied. O'Neill appeals the denial of his motion to suppress, as well as the denial of his motions for a mistrial and a new trial.

## FACTS

Early on the morning of February 11, 1983, Kenai police officer Bill Irwin stopped a vehicle driven by Steven Olds. Officer Irwin suspected that Olds was intoxicated and had him perform various field sobriety tests. Laurence O'Neill and Rod McGuire, who were with Olds, waited in the vehicle. After Olds failed the tests, Officer Irwin arrested him for driving while intoxicated. What followed thereafter led to O'Neill's arrest for assault and interfering with Olds' arrest and was the subject of disputed testimony at O'Neill's trial.

The state's first witness, Kenai police officer Ron Carter, testified that he observed Officer Irwin stop the Olds vehicle, and that he stayed to watch the subsequent events from his own patrol car. Carter testified that after Officer Irwin administered the sobriety tests, he saw Irwin and Olds return to Olds' vehicle. Carter further testified that he overheard Olds tell Officer Irwin that he wanted to tell his friends to move his car.

According to Carter, after these events, as Officer Irwin was backing out of the driveway with Mr. Olds in custody, O'Neill ran down the driveway and jerked open the driver's door of Irwin's patrol car. Carter testified that O'Neill seemed to be trying to pull Officer Irwin out of the patrol car. Officer Carter then approached Irwin's patrol vehicle to assist. As he reached the vehicle, he saw Officer Irwin strike O'Neill in the abdominal area. Carter grabbed O'Neill by the neck and pulled him backwards while Irwin handcuffed him. Carter testified that a struggle accompanied the handcuffing.

Officer Irwin's testimony was essentially the same as Officer Carter's. Irwin testified that after Olds had been arrested Olds indicated that he wanted to tell his friends to move his vehicle. Irwin further testified that he and Olds returned to Olds' vehicle and explained the arrest to the two passengers. According to Irwin, he and Olds then returned to his patrol vehicle. As Officer Irwin was backing out of the driveway O'Neill opened the vehicle door, grabbed Irwin's hair and scratched him in the face. On cross-examination, however, Irwin indicated that it was he who had initiated the contact with O'Neill. The state rested after officers Carter and Irwin testified.

Defense counsel's opening statement stressed the theory that Olds and Irwin never returned to Olds' vehicle to explain where they were going. O'Neill's counsel told the jury he expected the defense witnesses to testify that O'Neill approached the patrol vehicle merely to find out where Olds was being taken. Steven Olds, the first defense witness, related the story described by counsel in his opening remarks. During cross-examination of Olds the court recessed for lunch. At this point Officer Irwin informed the district attorney that he had tape-recorded the incident. Irwin recorded his arrests to avoid potential civil litigation arising from his acts. Irwin was not aware that the tape might be admissible at trial and had not previously mentioned it to the district attorney. After recess, cross-examination of Olds was completed and the existence of the tape recording was disclosed to the court. O'Neill's counsel moved to suppress the tape as evidence. The court denied this request and granted a continuance to give O'Neill's counsel an opportunity to listen to the tape.

The defense then called Rod McGuire, the other passenger in Olds' vehicle. McGuire testified that he had not remembered Officer Irwin and Olds returning to Olds' vehicle to explain the arrest until his memory was refreshed by the tape. He

further testified that Officer Irwin initiated the physical contact with O'Neill.

The defense then called Laurence O'Neill. He testified that he did not remember Officer Irwin and Olds returning to the vehicle following the arrest. In addition, O'Neill testified that he had merely approached Irwin's patrol car, tapped on the hood and tried to talk to Irwin through the window. O'Neill further testified that he asked Irwin what Irwin was doing with his friend, but Irwin ignored him. According to O'Neill, Officer Carter approached him from behind and placed him in a "choke" hold. At the same time, Irwin opened his patrol car door and punched O'Neill in the stomach several times. On cross-examination, O'Neill admitted knowing that Olds was under arrest.

Later in the trial, the state recalled Officer Irwin as part of its rebuttal case. He testified to making the tape recording. The tape was admitted into evidence and played for the jury. The tape indicates that Olds did ask Officer Irwin for permission to tell his friends to move his vehicle. Officer Irwin complied with the request. In addition, the tape reveals that Officer Irwin explained Olds' arrest to McGuire and O'Neill. Later in the tape, there are sounds of shouting, a struggle and commands by Irwin for someone to get into the car. The contents of the tape recording were stressed during the district attorney's closing argument. O'Neill was convicted and this appeal followed.

## DISCUSSION

O'Neill makes two arguments. First, he contends that the tape should have been suppressed since the recording was made without his knowledge and consent. *See* *Quinto v. Juneau*, 664 P.2d 630, 635–36 (Alaska App.1983). Alternatively, he argues that his opening statement and the testimony of his first witness committed

him to a defense theory which was contradicted by the tape. O'Neill contends that the state's failure to disclose the tape in advance of trial constituted a discovery violation that substantially prejudiced him by destroying his defense. Under these circumstances he argues that a continuance was not a sufficient remedy for the discovery abuse. O'Neill relies on *Stevens v. State*, 582 P.2d 621, 624–25 (Alaska 1978). We are satisfied that both *Quinto* and *Stevens* are distinguishable.

*Quinto* dealt with a tape recording initiated during a routine police-citizen contact prior to any arrest or seizure. Although Quinto was ultimately arrested, when he was first contacted by the police there was no reason to believe that he was committing an offense. Despite the routine nature of the encounter, it was recorded from the outset. The officer made no effort to inform Quinto that he was being recorded, and there was no allegation that any exigency existed to justify the recording. The testimony of the arresting officer indicated that he regularly recorded routine contacts with citizens for the express purpose of using the recordings in court in the event an arrest resulted from the contact. Under those circumstances, we held that the privacy clause of the Alaska Constitution, article 1, section 22, and the Alaska Supreme Court's holding in *State v. Glass*, 583 P.2d 872 (Alaska 1978), compelled suppression of the recording.[1]

In the present case, by contrast, the police recording commenced with the detention of Olds and proceeded to document his arrest. Olds clearly had no subjective expectation of privacy at the time, nor could he reasonably have had such an expectation. *See Palmer v. State*, 604 P.2d 1106, 1108 (Alaska 1979); *People v. Crowson*, 33 Cal.3d 623, 190 Cal.Rptr. 165, 660 P.2d 389, 392–93 (1983). Accordingly,

---

1. Significantly, *Quinto* did not involve an investigative or traffic stop. The arresting officer in *Quinto* approached the defendant's car and initiated a conversation when the defendant's car was already stopped. Although a portion of the tape recording in *Quinto* contained conversa-

tion occurring after the defendant was officially detained for purposes of the DWI investigation, the parties did not distinguish between the pre-detention and post-detention portions of the recording. Accordingly, we did not address that issue.

we do not believe it is appropriate to apply *Quinto* to the present case by giving our holding in *Quinto* a broad reading. Instead, *Quinto* must be interpreted narrowly, in light of the facts of this case. In cases such as this one, where electronic recording by police is commenced at the time of a lawful stop or arrest, we do not believe that consent to record is required. *Palmer v. State*, 604 P.2d at 1108.[2] Thus, assuming, without deciding, that O'Neill has standing to assert Olds' privacy rights, Olds' arrest precludes a finding that his privacy was invaded by the police recording.

O'Neill additionally argues that his situation is identical to that faced by the appellant in *Stevens v. State*, 582 P.2d 621 (Alaska 1978), where the court found a violation of Criminal Rule 16(b)(1)(i).[3] O'Neill points out that he did not learn of the tape until after he had made his opening statement outlining a theory of defense, which was effectively destroyed by the tape. Further, one of his key witnesses had testified on direct and cross-examination in support of that theory. Consequently, he concludes that the continuance granted by the trial court was of no avail and a mistrial should have been declared. We disagree.

We find it significant that Stevens immediately moved for mistrial when he learned that the state failed to provide him with the police report containing statements of his alibi witnesses. *Stevens v. State*, 582 P.2d at 624 n. 7. O'Neill did not seek a mistrial at the time he first learned of the existence of the tape. He was given an opportunity to review the tape and to adjust his defense accordingly. On the record it appears that he accepted the continuance, reviewed the tape, put on his case, argued the case to the jury and only then moved for a mistrial. We are satisfied that the mistrial motion came too late. The defendant's actions indicate that he did not initially believe that the evidence was incurably devastating and that he was, in effect, gambling on a jury verdict. While it appears that he changed his mind before the jury reached its verdict, we nevertheless are satisfied that he acted too late.[4] Given the strong public policy underlying the general rule that the solution for improper discovery is a continuance, not suppression of the evidence, we find no error and affirm. *But see Stevens v. State*, 582 P.2d at 624 n. 9.[5]

The judgment of the district court is AFFIRMED.

---

**2.** Similarly, suppression of a warrantless recording is not required if a police officer's decision to record a person *prior* to arrest or detention is supported by exigent circumstances. Moreover, even in the absence of exigent circumstances, if a person is advised that a recording is being made and thereafter chooses to speak with a police officer, no violation of privacy can be said to occur.

In addition to cases involving the detention or arrest of an accused, we believe warrantless electronic monitoring would be justified in situations such as traffic accidents, where uniformed police officers are called to the scene for the express purpose of investigation. Under such circumstances, we believe that witnesses interviewed at the scene could not reasonably expect privacy while communicating with investigating officers.

**3.** Alaska R.Crim.P. 16(b)(1)(i) provides:

(b) *Disclosure to the Accused.*

(1) *Information Within Possession or Control of Prosecuting Attorney.* Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;

**4.** In *Williams v. State*, 629 P.2d 54, 59 (Alaska 1981), the court excused failure to make a timely motion for mistrial because it found the error plain and "incurable" by a cautionary instruction. We do not consider any error in this case sufficiently "plain" to warrant excusing a timely motion for mistrial. *Williams* is therefore distinguishable.

**5.** In reaching this conclusion, we are additionally motivated by our recognition of a defendant's substantial interest, safeguarded by the double jeopardy clauses of the state and federal constitutions, in completing his trial before the jury initially chosen. A trial court cannot interfere with this right by granting a mistrial *sua sponte* in the absence of manifest necessity. Manifest necessity will rarely arise from a discovery violation.

**1292**

SINGLETON, Judge, concurring.

I agree with the court's disposition of the *Quinto* issue. However, I cannot agree with the court's treatment of O'Neill's claim that he was prejudiced by a discovery violation. It seems that the effect of the tape in O'Neill's case is virtually indistinguishable from the effect of the untimely disclosure of the witnesses' statements in *Stevens v. State*, 582 P.2d 621 (Alaska 1978). Under the circumstances, if there was error, it was incurable at the time O'Neill first learned of the tape. *Williams v. State*, 629 P.2d 54, 59 (Alaska 1981); *Stevens v. State*, 582 P.2d 621, 624 n. 9 (Alaska 1978).

I am nevertheless satisfied that there was no discovery violation in this case and therefore join in the decision to affirm. The tape constituted a discoverable recorded statement under Alaska Rule of Criminal Procedure 16(b)(1)(i) and 16(b)(2)(ii). However, it is undisputed that the prosecutor and his staff did not know of the tape until trial, and that the defendant was promptly notified at that time. The existence of a discovery violation would depend on a finding that Officer Irwin's knowledge of his tape was imputed to the prosecutor. Alaska R.Crim.P. 16(b)(4). We discussed this provision in *Russell v. Anchorage*, 626 P.2d 586, 590–91 n. 14 (Alaska App.1981), where we said:

> [U]nder the provisions of Criminal Rule 16(b)(4), the knowledge of the officer ... is in effect imputed to the prosecution. Alaska R.Crim.P. 16(b)(4) provides, in pertinent part:
>
> > (4) *Information within Possession or Control of Other Members of Prosecuting Attorney's Staff.* The prosecuting attorney's obligations extend to material and information in the possession or control of
> >
> > ....
> >
> > (ii) any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.

Irwin, the investigating officer, reported to the prosecutor about the investigation in general. I believe the phrase "reports to the prosecutor" refers specifically to information such as the tape recording in this case, provided the recording is made in furtherance of the officer's law enforcement duties. In this regard the rule simply applies the general law of agency. Knowledge of an agent is imputed to the principal if it concerns a matter about which the agent is obligated to give the principal information. Restatement (Second) of Agency § 272 (1958). "The agent must have a duty to reveal the information which he has. It is not enough that the agent has a duty in relation to the subject matter ...." Restatement (Second) of Agency § 275 comment c (1958).

Like the officer in *Russell*, Irwin was under a duty to reveal any information he gathered *within the course and scope of his employment* regarding the respective offenses of Olds and O'Neill. On the record before us, recording conversations with O'Neill and Olds was not within his employment, however, and consequently Irwin was not under a duty to disclose the fact that he had recorded the transaction to the prosecutor. Under these circumstances Irwin's knowledge about the tape recording was not imputable to the prosecutor. The prosecutor's failure to learn of the tape and notify O'Neill of its existence before trial did not constitute a discovery violation.