CITY AND BOROUGH OF
JUNEAU, Petitioner,

v.

Marcelo QUINTO, Jr., Respondent.

No. S–4.

Supreme Court of Alaska.

June 29, 1984.

John A. Leque, Asst. City-Borough Atty.,
and Gerald L. Sharp, City-Borough Atty.,
Juneau, for petitioner.

David Mannheimer, Asst. Atty. Gen., An-
chorage, and Norman C. Gorsuch, Atty.
Gen., Juneau, for amicus State of Alaska.

Susan Orlansky, Asst. Public Defender,
and Dana Fabe, Public Defender, Anchor-
age, for amicus Public Defender Agency.

Before BURKE, C.J., and RABINOW-
ITZ, MATTHEWS, COMPTON and
MOORE, JJ.

OPINION

BURKE, Chief Justice.

The issue in this case is one involving an individual's right to privacy under the Alaska Constitution.[1] The question to be determined is whether a tape recording of a suspect's conversation with a police officer was properly admitted into evidence at the suspect's trial, when the suspect knew, or reasonably should have known, that he was speaking to a police officer, but was not aware that the officer was recording their conversation. We hold that the tape recording was properly admitted.

I

The recording in question was made by a Juneau police officer, Karl Lewkowski, during the course of his apprehension and arrest of a suspected drunk driver.[2] The suspect, Marcelo Quinto, Jr., was not aware that his conversation with Lewkowski was being recorded,[3] but he knew, or reasonably should have known, that Lewkowski was a police officer.[4]

At Quinto's trial, in the district court, the tape recording was admitted into evidence, and Quinto was convicted of the crime of driving while intoxicated. On appeal, his conviction was reversed by the court of appeals. *Quinto v. City and Borough of Juneau*, 664 P.2d 630 (Alaska App.1983). The matter is now before this court on a petition for hearing from that decision.[5] We reverse on the issue presented.[6]

The court of appeals' decision on this issue was based upon its conclusion that the tape recording was inadmissible under our holding in *State v. Glass*, 583 P.2d 872 (Alaska 1978). In that case we held that it was a violation of a defendant's right to privacy, under article I, section 22 of the Alaska Constitution, for the police to surreptitiously monitor the defendant's conversation with an undercover police informant, without a warrant or other court order, by means of a radio transmitter worn by the informant. *Id.* at 879–81. Interpreting our decision, the court of appeals "conclude[d] that the warrant requirement of *Glass* must be read to include situations involving routine nonconsensual recording of pre-arrest conversations between citizens and uniformed officers." 664 P.2d at 636 (footnote omitted). Since the recording in this case was made in the

---

1. Article I, § 22 of the Alaska Constitution states, in part: "The right of the people to privacy is recognized and shall not be infringed." *See also* Article I, § 14:

   The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. The recording was made by means of a small tape recorder worn on the officer's belt. The recorder was activated by Lewkowski as he approached the suspect, upon initial contact, and it continued to run until after the suspect was arrested. Further details concerning the arrest are reported in *Quinto v. City and Borough of Juneau*, 664 P.2d 630 (Alaska App.1983).

3. There is no evidence that Quinto knew, or had reason to know, that Lewkowski was recording their conversation; Lewkowski failed to inform

him of that fact. For purposes of our decision, therefore, we assume that Quinto harbored an actual (subjective) expectation of privacy, *i.e.* one that his conversation with the officer was not being electronically recorded.

4. Lewkowski was in full uniform, wearing his patrolman's hat, sidearm, nightstick, handcuffs, extra ammunition, radio, and police badge. It is inconceivable that Quinto might have failed to recognize that he was a police officer, performing his official duties.

5. The petition was filed and granted pursuant to Rule 304, Alaska R.App.P.

6. Although the court of appeals concluded that reversal was required on other grounds, it decided the issue of the admissibility of the tape recording, and other arguments, "since they raise issues that are likely to recur upon retrial." Our review is limited to that part of the court of appeals' decision dealing with the admissibility of the tape recording, the only issue addressed in the petition for hearing.

field, prior to Quinto's arrest, detention and presence in the police station, the court of appeals concluded that the evidence should be suppressed, distinguishing *Palmer v. State*, 604 P.2d 1106 (Alaska 1979).[7]

The appellate court's interpretation of *Glass* is too broad; its reading of *Palmer* is too narrow.

The test for determining whether a person's right to privacy has been invaded under article I, section 22 is two-fold: (1) did the person harbor an actual (subjective) expectation of privacy, and, if so, (2) is that expectation one that society is prepared to recognize as reasonable? *State v. Glass*, 583 P.2d at 875. For the reasons stated earlier in this opinion, note 3 *supra*, we assume, for purposes of our decision, that Quinto harbored an actual (subjective) expectation of privacy. Thus, we must determine only whether Quinto's expectation of privacy in these circumstances is one which society is willing to recognize as reasonable. *Glass* requires nothing more.[8]

Article I, section 22 fosters and protects those values and characteristics typical of and necessary for a free society. Some of these are the sharing of thoughts and ideas, personal trust between individuals, free expression, and individuality. While it is certainly true that surreptitious recording of conversations between citizens can have a chilling effect on such forms of freedom, this effect is rendered de minimis when one is aware, or reasonably should be aware, that he or she is speaking to a police officer who is in the process of executing either a lawful arrest or a lawful investigative stop. In such case, one's candor and willingness to share personal confidences are unlikely to be any more effectively chilled than they already are by the added possibility that what is being said may be electronically recorded.

Lewkowski stopped Quinto based upon a reasonable and articulable suspicion that Quinto was driving while intoxicated. Thus, the stop was lawful. Quinto knew, or reasonably should have known, that he was speaking to a police officer, since Lewkowski was in full uniform. Also, it should have been clear to Quinto that Lewkowski was performing his official duties throughout the period covered by the recording. Under these circumstances, we hold that Quinto's expectation of privacy, *i.e.* his assumed expectation that his conversation with Lewkowski would not be recorded, is not an expectation which society is willing to accept as reasonable.[9] We, therefore, reverse the court of appeals' determination that the tape recording was improperly admitted by the trial court.

REVERSED.

7. In *Palmer*, the defendant was videotaped at the police station following his arrest for driving while intoxicated. Distinguishing *Glass*, we held that any actual (subjective) expectation that the defendant might have had that his actions would not be recorded is not one that society is prepared to recognize as reasonable. 604 P.2d at 1108. Here, *infra*, we apply the same reasoning to a recording made in the field, prior to the defendant's arrest. The key element, in these cases, is the defendant's awareness that he is in the presence of the police.

8. The Public Defender Agency, appearing as amicus curiae, argues that it is the fact of recording, not police presence, which is critical to our decision. For the reasons stated in the text of this opinion, we disagree. To the extent that *Glass* can be read to suggest otherwise, it is modified.

9. One judge of the court of appeals would have reached the same conclusion, stating: "I cannot see how anyone could have an expectation of privacy in the contents of a conversation with a uniformed police officer." *Quinto v. City and Borough of Juneau*, 664 P.2d at 636 (Singleton, J., concurring in part, dissenting in part).